## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Your affiant, William. B. Hughes, being duly sworn, deposes and states the following:

1. I, William B. Hughes, Jr., am a Border Patrol Agent with the U.S. Department of Homeland Security (DHS), Customs and Border Protection (CBP), U.S. Border Patrol (USBP), assigned to the Mobile, Alabama, Border Patrol Station. I have been employed by the U.S. Border Patrol since June 1997.

2. As part of my daily duties, I investigate violations of federal law, criminal and administrative, such as violations pertaining to individuals who are unlawfully present in the United States. Moreover, I investigate violations of Title 8, United States Code (U.S.C.), Section 1324 (Alien Smuggling).

3. As a Border Patrol Agent, my duties regularly include the identification and apprehension of individuals for administrative and criminal law violations. As a Border Patrol Agent, I have received training and experience in investigating violations of Title 8, U.S.C., Sections 1324, 1325, and 1326.

4. I am familiar with the information contained in this Affidavit based upon the investigation I conducted and based on my conversations with other law enforcement officers.

1

5.     Because this Affidavit is being submitted for the limited purpose of securing an arrest warrant, I did not include each and every fact known to me concerning this investigation. I have set forth only those facts I believe are necessary to establish probable cause to believe that violations of Title 8, U.S.C., Section 1324, have occurred. Where statements of others are set forth in this Affidavit, they are set forth in substance and in part.

6.     On or about December 31, 2019, BPA Michael Blackmon received a call from Officer Ethan Ellerbee from the Florida Highway Patrol.

7.     Officer Ellerbee stated that he was on a vehicle stop on I-10 Eastbound, near mile marker 3 in Escambia County, Florida, with a black 2011 Cadillac Escalade bearing Texas temporary license plate 58693N6.

8.     Officer Ellerbee stated that in addition to the driver, identified as Julio Cesar AGUILAR-Moreno, there were eight other passengers in the vehicle. All were adult males who claimed to be aliens illegally present in the United States.

9.     Officer Ellerbee and three other officers of the Florida Highway Patrol conducted field interviews of the subject and passengers of the vehicle and noticed that their stories contained indicators of human trafficking and alien smuggling.

10. Officer Ellerbee asked BPA Blackmon if he could send agents to the scene to assist.

11. Agents William B. Hughes, Jr., Gabriel Golban, Scott Gandre, and Jared Andrus were dispatched to the scene.

12. Upon arrival, agents questioned each of the occupants of the vehicle concerning their citizenship and determined that they were all aliens illegally present in the United States.

13. FHP officers found two of the passengers hiding in the rear of the vehicle after ordering the occupants to get out. Both continued to attempt to hide when verbally challenged.

14. Located on top of vehicle's the center console, FHP officers found a handwritten list of all occupants of the vehicle, except the driver. The list included the full name and the destination state of each of the eight alien passengers.

15. All of the aliens interviewed by the FHP Officers stated that they were to pay the driver upon arrival at their destination.

16. The vehicle had a large amount of trash and urine filled bottles, a common occurrence in alien smuggling vehicles, indicating a long journey.

17. There were a total of nine occupants in the vehicle but no luggage.

18. Agents asked the passengers if they had any identification documents, and all but two of had such documents.

19. The driver, Julio Cesar AGUILAR-MORENO, and front seat passenger were taken into custody by the FHP and charged with human smuggling under Florida law.

20. The remaining seven passengers were taken into custody and were transported to the Mobile, Alabama, Border Patrol Station for further investigation.

21. At the station, three of the passengers, David Fredy JIMENEZ-Jimenez, Juan Mario AGUILAR-Lopez, and Josue GARCIA-Hernandez, were interviewed individually by Border Patrol Agent Daniel Roland.

22. All of the passengers stated that separately, and at different times and places, they crossed the Mexico/United States border illegally. They stated that they traveled to an unknown hotel in Texas where they they stayed until they were picked up by AGUILAR-Moreno.

23. None of the passengers had a good memory of the names of the specific locations involved in their journey.

24. David Fredy JIMENEZ-Jimenez stated that he was from Mexico and that he crossed illegally into the United States in Texas on approximately December 11, 2019. He stated that his family paid approximately $4900.00 to an unknown individual for him to be smuggled into the United States. He stated that he was picked up near a highway and taken to a hotel where he stayed for approximately ten days. He stated that he was picked up by the driver, AGUILAR-Moreno, and was traveling to Bainbridge, Georgia, when apprehended.

25. Juan Mario AGUILAR-Lopez stated that he is from Mexico and that he entered illegally into the United States on approximately December 19, 2019, at an unknown location on the border in Texas. He stated that his family paid an unknown amount of money to an unknown person for him to be smuggled. He stated that once across the border, he and two others walked for six days to an unknown hotel where he stayed for three days. He stated that his ultimate destination was North Carolina and he was traveling there when apprehended.

26. Josue GARCIA-Hernandez stated that he was from Mexico and that he entered into the United States on approximately December 11, 2019, somewhere in Texas, place unknown. He stated that a family member paid an unknown amount of money to an unknown person for him to be smuggled. He stated that he was taken to a hotel in Texas after walking for four days. He was

accompanied by a friend, known as "El Guero." El Guero was determined to be Jose MORALES-Hernandez, the person who occupied the front passenger seat of the transport vehicle when it was stopped by FHP. GARCIA-Hernandez was picked up from the hotel by the driver, AGUILAR-Moreno.

27. The driver of the vehicle, Julio Cesar AGUILAR-Moreno, is a Mexican citizen based on the identification in his possession and confirmed by his statements. No criminal history was found using the information contained therein.

I, William B. Hughes, Jr., the Affiant, respectfully submit that the preceding facts indicated in this Affidavit establish probable cause to believe that JULIO CESAR AGUILAR-MORENO did, in the Northern District of Florida, violate tile 8, United States Code, Section 1324, Transporting Illegal Aliens.

*William B. Hughes, Jr.*
William B. Hughes, Jr.
Border Patrol Agent
United States Border Patrol

THE ABOVE AGENT HAS ATTESTED
TO THIS AFFIDAVIT PURSUANT TO
FED. R. CRIM. P. 4.1(b)(2)(B) THIS
2nd DAY OF JANUARY, 2020

*Elizabeth M. Timothy*
ELIZABETH M. TIMOTHY
Chief United States Magistrate Judge